# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**H-D MICHIGAN, LLC and**
**HARLEY-DAVIDSON MOTOR COMPANY, INC.,**
        **Plaintiffs,**

**v.**                               **Case No. 11-CV-00742**

**HELLENIC DUTY FREE SHOPS S.A.,**
        **Defendant.**

---

## <u>DECISION AND ORDER</u>

Defendant submits additional materials in support of its request that I dissolve or modify the TRO currently in effect. First, defendant reiterates its contention that it is not bound by the licensing agreement plaintiffs signed with Elmec Sport S.A. ("Elmec"). Elmec attempted to transfer the licensing agreement to defendant when it merged with defendant and defendant argues that, under § 14 of the agreement, Elmec was not authorized to transfer the agreement without plaintiffs' prior written consent.[1] However, I previously concluded and now reiterate that § 10 of the agreement, which is more specific than § 14, limits § 14's application, and that § 10.1(c)(i), which governs a transfer resulting from a merger, did not require plaintiffs' prior written consent, but instead authorized plaintiffs to terminate the agreement. Defendant relies heavily on <u>Cincom Sys., Inc. v. Novelis Corp.</u>, 581 F.3d 431 (6th Cir. 2009), which is neither binding on me nor applicable to the present case because it dealt with the interpretation of an entirely different contract.

---

[1]If this contention were correct, I would have to dismiss the case entirely because defendant would not be bound by the consent to personal jurisdiction contained in the agreement.

Defendant also asks me to increase the bond and provides additional evidence in support of its request. Defendant first presents evidence that it will lose profits as a result of having to close its store in Glyfada, Greece. Defendant presents evidence that between September 2010 and March 2011 it made approximately €135,000 at the store, and it avers that it intended to sell the AW line in the same store during the same time period this year. While it is unclear whether the €135,000 takes into account the amount defendant is saving on overhead by closing the store, and while plaintiffs have presented evidence that defendant is still selling some merchandise from the store at its nearby Harley-Davidson motorcycle dealership, I will include the full amount of claimed lost profits in the bond. I err on the high side when setting the bond amount because defendant's recovery will ultimately be limited by the size of the bond. <u>Mead v. Johnson & Co. v. Abbott Labs.</u>, 201 F.3d 883, 888 (7th Cir. 2000).

Second, defendant contends that a delayed sale of the AW line is likely to result in a significant loss in the value of goods. If it turns out that defendant has been wrongfully enjoined, defendant will need to pay to store the goods and then to re-market them to new buyers, and both parties agree that out-of-season goods typically sell at a discount of 50% or more. While this is a complete line of new goods, and typically out-of-season goods are remainders from lines that have been available for some time, defendant faces a meaningful risk. Therefore, I will grant defendant's request and allow for a 70% loss in the current €972,815 wholesale value of the AW line.

Finally, defendant requests an additional €972,815 because it avers that every dealer who has ordered the AW line of goods will sue defendant for breach of contract, seeking lost profits on goods that would be marked-up by 100%. Dealers' profits would not

2

equal the full amount of the mark-up though because they would need to subtract their own transaction costs when calculating their lost profits. Additionally, plaintiffs submit evidence that at least three dealers have already cancelled their orders, and not all dealers who have outstanding orders will ultimately file lawsuits. Defendant also admits that it planned to sell some of the goods through its own retail store. Therefore, I will add only €500,000 to the bond to protect defendant from potential lawsuits by dealers.

Rounding these damages up, I will order plaintiffs to post a total bond of $1.8 million. This bond includes €680,970.50 for the lost wholesale value of the AW line (70% of €972,815), €135,000 for the lost profits at the Glyfada store, and €500,000 for potential lawsuits by dealers. This equals €1,315,970.50, which converts to a little under $1.8 million. I will order plaintiffs to post this bond with the court. The bond does not need to be made reachable in Greece because, as a party to the licensing agreement, defendant is subject to personal jurisdiction in this court.

**THEREFORE, IT IS ORDERED** that the TRO shall remain in effect and plaintiffs are ordered to post additional security with the court to bring the total amount of the bond up to $1.8 million.

Dated at Milwaukee, Wisconsin, this 17th day of November 2011.

s/_____
LYNN ADELMAN
District Judge

3