# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

H-D MICHIGAN, LLC and
HARLEY-DAVIDSON MOTOR COMPANY, INC.,
        Plaintiffs,

    v.                                      Case No. 11-CV-00742

HELLENIC DUTY FREE SHOPS S.A.,
        Defendant.

## DECISION AND ORDER

On August 5, 2011, plaintiffs H-D Michigan, LLC ("H-D") and Harley-Davidson Motor Company, Inc. ("Harley") filed this lawsuit against defendant Hellenic Duty Free Shops, S.A., a Greek corporation, for breach of a trademark licensing agreement. Three months later, defendant filed a parallel lawsuit in a Greek court, asking that court to uphold defendant's right to sell goods bearing plaintiffs' trademarks. Before me now is plaintiffs' motion for a preliminary anti-suit injunction ordering defendant to dismiss the Greek action.

After filing this lawsuit, plaintiffs moved for a temporary restraining order ("TRO") and a preliminary injunction. I granted plaintiffs' request for a TRO on September 6, 2011, after defendant declined my invitation to participate in a hearing. I then extended the TRO on September 19 to give plaintiffs time to serve process on defendant in Greece under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. After defendant was properly served, I conferred with the parties and again extended the TRO because defendant indicated it would need time to engage in discovery before participating in a preliminary injunction hearing. The TRO prohibited defendant from selling goods

bearing plaintiffs' trademarks. Defendant then moved to dissolve the TRO arguing that: 1) it was not bound by the licensing agreement and did not consent to personal jurisdiction in this court as part of the agreement, and 2) its collection of autumn-winter 2011-2012 apparel (the "AW collection") that bears plaintiffs' trademarks had already been authorized for sale under the terms of the agreement. I denied defendant's motion to dissolve the TRO in my orders dated November 7, and November 17, 2011. In doing so, I held that the licensing agreement was binding on defendant and that defendant had consented to personal jurisdiction in this court. I also held that plaintiffs were likely to succeed in proving that the licensing agreement prohibits defendant from selling the AW collection. On December 20, 2011, after holding a preliminary injunction hearing, I issued an injunction prohibiting defendant from selling or otherwise distributing the AW collection.

On November 15, 2011, just one week after I denied defendant's motion to dissolve the TRO, defendant filed a parallel action in Greece. Defendant asked the Greek court to enter a provisional order enjoining plaintiffs from interfering with the distribution of the AW collection and fining plaintiffs €100,000 for any violation of the requested injunction. Defendant did not inform either plaintiffs or myself about the Greek lawsuit, and defendant did not inform the Greek court about this case or the pre-existing TRO. On December 2, 2011, the Greek court held an ex parte hearing and subsequently ordered plaintiffs to refrain from obstructing defendant's sale of the AW collection. This order is effective until March 20, 2012, when a full hearing on defendant's request is scheduled to take place. On January 18, 2012, plaintiffs were served with a copy of the Greek court's order. This was the first time plaintiffs received any notice of the Greek lawsuit.

On January 24, 2012, plaintiffs filed an emergency motion in this court for a preliminary anti-suit injunction asking that I order defendant to dismiss the Greek lawsuit. It is well settled that I have the power to order persons subject to personal jurisdiction in this court to refrain from pursuing a lawsuit in a foreign jurisdiction. Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004); Philips Med. Sys. Int'l v. Bruetman, 8 F.3d 600, 604 (7th Cir. 1993); Laker Airways Ltd. v. Sabena, Belgian World Airlines, et al., 731 F.2d 909, 926–27 (D.C. Cir. 1984). However, such an injunction should rarely be issued because of concerns for international comity. Id. Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." Hilton v. Guyot, 159 U.S. 113, 164 (1895). Although an anti-suit injunction binds only the party who is subject to personal jurisdiction in a United States court, it effectively restricts a foreign court's ability to exercise its jurisdiction. Laker Airways, 731 F.2d at 927. Therefore, the general rule is that parallel proceedings by two different courts exercising in personam jurisdiction should ordinarily be allowed to proceed simultaneously, at least until one court enters a final judgment that can be pleaded as res judicata in the other. Id. at 926–27.

In order for a U.S. court to consider issuing an anti-suit injunction, the party seeking the injunction must first prove that the parallel suits involve the same parties and that the resolution of the U.S. case will be dispositive of the foreign proceeding. E & J Gallo Winery v. Andina Licores S.A., 446 F.3d 984, 991 (9th Cir. 2006); Quaak, et al. v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren, 361 F.3d 11, 16–17 (1st Cir. 2004); Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 10 F.3d 425, 431 (7th Cir. 1993). The circuits are split on

the proper standard to be applied once this threshold requirement is met. The Seventh Circuit has adopted the "liberal" approach, under which a court must decide whether "letting the two suits proceed would be gratuitously duplicative, or as the cases sometimes say 'vexatious and oppressive.'" Allendale, 10 F.3d at 431 (quoting Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League, 652 F.2d 852, 855 (9th Cir. 1981)). If equitable considerations weigh in favor of issuing an injunction, the court should issue one unless the opposing party provides some evidence that the issuance of an injunction would actually harm U.S. foreign relations. Id. In other words, a "purely theoretical" concern for international comity "ought not trump a concrete and persuasive demonstration of harm to the applicant for the injunction." Id. at 432–33. Under the "conservative" approach adopted by other circuits, a court must give more weight to the concern for comity and can issue an anti-suit injunction "only in the most compelling circumstances." Laker Airways, 731 F.2d at 927. For example, a court can issue an injunction where it is necessary to protect the issuing court's jurisdiction or to prevent evasion of the issuing court's important public policies. Id.

The difference between the liberal and conservative approaches seems largely semantic. In any case, I find that a preliminary anti-suit injunction is appropriate in this case under either approach. The threshold requirement is met here because the Greek case involves the same parties and the same issues as this lawsuit. In this court, H-D and Harley are suing defendant for breach of the trademark licensing agreement between Harley and defendant. H-D is not a party to the agreement, but it is the owner of the trademarks in question. H-D gives Harley the right to grant licenses to third parties to use the trademarks. Plaintiffs allege that Harley validly terminated the licensing agreement because defendant

4

breached the agreement by selling unauthorized goods. As a result, plaintiffs claim that defendant no longer has the right to distribute any goods bearing plaintiffs' marks. In the Greek case, defendant is suing Harley for breach of the same agreement. Defendant claims that it is not bound by the licensing agreement, that, if the agreement is binding, Harley wrongfully terminated it, and that the agreement gives defendant the right to sell the AW collection. The key question in both cases is what are defendant's rights and duties under the agreement. Both this court and the Greek court must interpret the agreement using Michigan law pursuant to the choice-of-law provision in the contract.[1] Since the issues are the same in both cases, this case is dispositive of the Greek case.

Applying the Seventh Circuit's liberal approach, I find that equitable concerns weigh in favor of the injunction. The agreement contains a forum selection clause that designates either this court or the Milwaukee County Circuit Court as the exclusive fora for disputes "arising out of or relating to" the agreement, and defendant consents to personal jurisdiction in such court as part of that provision. (Prelim. Inj. Hr'g, Def.'s Ex. 1.) By initiating the Greek lawsuit, defendant violated the forum selection clause and is attempting to force plaintiffs to simultaneously litigate the exact same issues in courts on two different continents. These parallel lawsuits have already subjected plaintiffs to conflicting orders. Thus, the Greek lawsuit is clearly vexatious and oppressive. See Black's Law Dictionary

---

[1] § 16.1 of the contract reads: "This Agreement shall be construed in accordance with, and all disputes between the parties arising out of or relating to this Agreement shall be governed by, the laws of the State of Michigan, without regard to any choice of law principles." (Prelim. Inj. Hr'g, Def.'s Ex. 1.) Defendant conceded the validity of this choice-of-law provision in its brief before the Greek court. (Def.'s Br. in Opp. to Emergency Mot. for Prelim. Anti-Suit Inj. Ex. 1 at 30 ("whole Agreement, by virtue of Article 16.1 thereof, is governed by the Law of the State of Michigan, U.S.A.").)

(9th ed. 2009) (defining vexatious as "without reasonable or probable cause or excuse; harassing; annoying").

Furthermore, there is evidence that defendant filed the Greek action in bad faith. In its brief before the Greek court, defendant failed to mention either the forum selection clause or this court's TRO. These omissions were not made by mistake. The Greek attorney representing defendant in the other case was obviously aware of this case because he submitted two declarations in this court in support of defendant before he filed the Greek lawsuit. (Decls. of Alexandros Kalantzis Oct. 27, 2011 and Nov. 8, 2011.) Defendant also failed to notify plaintiffs about the December 2, 2011 hearing in Greece.[2] As a result, the Greek court was unaware of this court's orders and did not have the opportunity to read all of the relevant contract language or to hear plaintiffs' arguments when it granted injunctive relief to defendant. This gave defendant the chance to distribute the AW collection without the Greek court holding a meaningful hearing.

Defendant has not pointed to any reason that an anti-suit injunction would harm U.S. foreign relations. Instead, defendant tries to explain its decision to file the Greek action by arguing that it cannot file any claims against plaintiffs in this court because it objects to this court's exercise of personal jurisdiction. Filing counterclaims subsequent to

---

[2] Plaintiffs have submitted affidavits indicating that neither they nor their attorneys ever received notice of the Greek lawsuit prior to the December 2, 2011 hearing. In response, defendant argues that a Greek state-designated agency was supposed to serve plaintiffs "by cable" and that defendant assumed this had been done. Defendant does not, however, present any evidence that either plaintiff was in fact formally served with process, or that defendant informally notified plaintiffs about the lawsuit. The parties were regularly communicating about this case throughout November and December, and they appeared together before this court on November 23, and December 15, 2011. Defendant's failure to ensure that plaintiffs were aware of the Greek case strongly supports a finding of bad faith.

or concurrently with a jurisdictional objection will not result in a waiver of the jurisdictional defense. U.S. v. Ligas, 549 F.3d 497, 502 (7th cir. 2008). Therefore, defendant can file counterclaims in this court without waiving its objection to personal jurisdiction. While Greek law does not appear to be relevant to this case because of the choice-of-law provision, to the extent that it is relevant, I am capable of applying it. See Gallo Winery, 446 F.3d at 994.

Applying the more conservative approach to anti-suit injunctions, I still find that an injunction is warranted in this case. An injunction is necessary both to protect this court's jurisdiction and to prevent defendant from evading this court's important public policies. First, the Greek action is a blatant attempt by defendant to re-litigate issues that I have already decided, and it has resulted in an injunction in Greece that directly contradicts this court's orders. Therefore, I believe it is appropriate to issue a preliminary anti-suit injunction to prevent defendant from using further litigation tactics to undermine this court's jurisdiction. Second, the Supreme Court has established a strong public policy in favor of the enforcement of forum selection clauses in international commercial contracts. Gallo Winery, 446 F.3d at 992 (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 3 (1972)). "When included in freely negotiated commercial contracts, [forum selection clauses] enhance certainty, allow parties to choose the regulation of their contract, and enable transaction costs to be reflected accurately in the transaction price." Id. Granting a preliminary anti-suit injunction and enforcing the forum selection clause would prevent defendant from evading this important public policy.

Since being notified of the Greek action, plaintiffs have filed two petitions with the Greek court, one to enforce this court's December 20, 2011 preliminary injunction order

in Greece, and another to revoke the provisional order obtained by defendant. In response, the Greek court has scheduled a provisional hearing on plaintiffs' petitions for February 17, 2011. Plaintiffs' effort to dismiss the parallel lawsuit by working through the Greek courts does not change my opinion that a preliminary anti-suit injunction is appropriate. Defendant should work with plaintiffs to dismiss the Greek action.

Finally, plaintiffs have already posted security in the amount of $1.8 million with this court to support the earlier TRO and preliminary injunction. In my orders dated November 7, and November 17, 2011, I found that this amount was sufficient to protect defendant in the event that defendant has been wrongfully enjoined from selling the AW collection. I believe that the money posted with the court is also sufficient to protect defendant's interests with respect to this preliminary anti-suit injunction. Therefore, I will not order plaintiffs to post additional security at this time.

**THEREFORE, IT IS ORDERED** that plaintiffs' emergency motion for a preliminary anti-suit injunction [DOCKET #82] is **GRANTED**. I will separately enter plaintiffs' proposed order enjoining defendant from pursuing the parallel lawsuit in Greece.

Dated at Milwaukee, Wisconsin, this 7th day of February, 2012.

s/_____
LYNN ADELMAN
District Judge